The first case today is number 22-1727, United States v. Brian Dennison. At this time, would counsel for the appellant introduce himself on the record to begin? Thomas Hallett for the defendant appellant. Good morning, Mr. Hallett. You may proceed. Good morning. Judge Gallardo, Judge Selya, Judge Howard. If I could reserve two minutes for rebuttal? Yes, you may. Thank you. May it please the court. The defendant appellant's best argument in this case pertains to the standard of review to be applied by this court. This is a mistrial case involving a criminal threat allegation. After a witness was found to have COVID, the case was mistried. And it was for lack of a government witness. So when there's an unavailability of a government witness, the court per eight circuits always reviews it with a strictest scrutiny standard. The reason that standard is so important is because in this case that places an extra burden on the court who ruled as opposed to a burden on the defendant to articulate reasons as to why the mistrial should not go forward. I don't really understand the use of strict scrutiny as a standard of review. I understand the citation that you make, and I understand there are some cases, albeit none in this circuit, that refer to some degree of heightened scrutiny. But I'm not aware of any case that suggests that the standard of review for mistrial declarations is other than abuse of discretion. With all due respect, Judge, I believe that in a number of cases, U.S. v. Fisher, U.S. v. a number of other cases, all in different circuits, they have applied a strictest scrutiny with respect to analyzing how the court. They have said that they are applying strict scrutiny, but I don't understand how that translates into an analytic framework. I mean, I like to think that we scrutinize the facts of the case fairly strictly to begin with. So I'm struggling to find any case that spells out what the analytic framework is, where something other than abuse of discretion review applies to a mistrial declaration. None of the other cases do it. They mouth the words, but they don't give me the framework. My understanding is that the judge who, sua sponte in particular, rules to mistry a case, has to articulate on its own any available reasons why it should not be mistried. For example, in this case, and submitted in the briefs to this court, the defense argues that a continuance was a fairly obvious alternative to a mistrial. So if I understand you correctly, you say that this standard, which you refer to as strict scrutiny, somehow operates to excuse a defendant from coming forward with alternatives to present to a court, alternatives which we've said in McIntosh, a defendant has to present, or else they're deemed forfeited and subject to plain error review? I would suggest that it doesn't allow the defendant, it doesn't relieve the defendant of that burden. It simply places a burden on the court, independent of that. Wait a minute, the burden can't be in both places. I mean, the burden's either, if McIntosh, which is the precedent in this circuit, which is subsequent to Arizona versus Washington, if McIntosh is the standard, and the defendant has the burden of coming forward and articulating alternatives on pain of forfeiture, what McIntosh says, then I don't understand what burden is on the court, other than its ordinary burden to scrutinize and apply the, scrutinize the evidence and apply the law. In that context, Judge, I would then agree with you that it does relieve the defendant of his burden. If we indulge your interpretation. That is correct. So is there any case in which the court says it's considering whether to declare a mistrial, engages in a discussion with the parties, counsel for the defendant does not offer a particular alternative, and the court therefore doesn't consider that alternative, and either a circuit court or the Supreme Court then reverses the action and says there's double jeopardy, merely because the court didn't consider an alternative that had not been proposed in a discussion about what alternatives existed? Yes, I believe there is. There's a Walke v. Edmondson. Not sure which circuit that is with. I think that's the Tenth Circuit. So here, one of the alternatives would have required the defendant to waive a constitutional right. And there was no suggestion made by the defendant that the defendant was willing to waive that right. That is correct. However, under the analysis that I'm proposing, which may or may not be adopted, the strictest scrutiny would require the court to come up on its own with possible alternatives and rule those out. We were not obviously given that option. And this sort of goes into how the mistrial occurred, and that is that we were originally under the impression that we would go forward, despite the fact that a witness had tested positive for COVID. But you had a general order, and the jury brought in on representations that would be contrary to going forward. Well, as I articulated in my brief, I don't think the general order actually did rule it out, but that's a technicality. The general order did not include proper language to deal with that issue, and the judge initially said, the orders don't govern this issue. The orders do not tell us what to do in this context. Quite frankly, I think there should have been a plan for dealing with this in this context, since we were guaranteed, or at least it was likely, that something like this would happen. But the order itself mixed up the terminology, and it used quarantine instead of isolation. It used required instead of suggested, and that order, as written, did nothing in the context of this case. But surely the jurors reasonably understood what was told to them, to the extent that they would have been surprised to find that the court was knowingly allowing someone to sit in the courtroom for an extended period of time who everyone knew was infected. They perhaps would have been surprised, they would have been surprised, but they also would have been told. And the judge suggested that he could speak to the jurors. And Larum Ramirez, which is the First Circuit case, which says you have to speak to the jurors, clearly articulates that when there is a taint, a possible taint, ask the jurors if they in fact are tainted, if there is a possible remedy. As I put in my brief, we were a ways into COVID, and the jurors were seated a distance from where this individual was a witness. The protocols in place in that courtroom were the state of the art, as the judge kept saying. I think it would have been very wise for the court to have requested voir dire, or to have done voir dire of all jurors. And the court ruled that out immediately from returning from a 17 break. He ruled that out without ever discussing with counsel any of the particulars. That's getting to be a long sentence at this point. Thank you. Good morning, may I please the court, Brian Kleinbord on behalf of the government in this case. Your honors, I don't want to belabor the standard of review issue too much, but I do think it's important. And as opposing counsel says, he believes it's the best argument in his favor. The general standard of review that the Supreme Court and this court have applied in reviewing mistrial is the abuse of discretion standard. The Supreme Court has said that broad discretion must be accorded trial courts to deal with the varying and often unique situations that arise in a criminal trial. Now, so in Arizona v. Washington, the Supreme Court does introduce this idea of a sliding scale of scrutiny. But we need to go back to what the Supreme Court actually said in Arizona v. Washington. And what the court says there is that double jeopardy bars a retrial where bad faith conduct by the prosecutor affords the juror and affords the government a more favorable opportunity to convict the defendant. And the court specifically delineates two situations when strict scrutiny would apply. The first is when there's reason to believe that the prosecutor is using the superior resources of the state to harass or to achieve a tactical advantage over the accused, which we don't have in this case. And the second involving the issue that opposing counsel says applies here involves missing government witness. But what the court says in that case is it applies when there's the unavailability of critical prosecution evidence, but then drops a footnote, which explains, I think, that language. And the court says if, for example, a prosecutor proceeds to trial aware that key witnesses are not available to give testimony. And the court says in Arizona v. Washington, wasn't the precise holding directed not at the scrutiny that must be necessarily applied by the district court, but rather, quote, whether the court of appeals applied an inappropriate standard of review? Yes, I think that's correct. And so do you distinguish that from the holding that strict scrutiny is a standard? Well, I think that I cite Arizona v. Washington just because that language has then been, when opposing counsel says that there are eight circuits that have applied the strict scrutiny standard, what those courts are actually doing is they're, all they're doing is they're repeating back that language that I just cited to the court about when strict scrutiny might apply. But that's not true in every case, right? The Third Circuit case with the unexpected broken leg. Yes, the Third Circuit, well, the Third Circuit case Rivera cites Arizona v. Washington, but interestingly, then goes on to apply in its holding the Fifth Circuit case in 1958 where the court says, we therefore conclude that the district court did not exercise sound discretion in declaring a mistrial. So I think that case is distinguishable on its facts. The only case that I could find of the cases cited by Mr. Denison where a court actually applies or purports to apply this strict scrutiny standard is the Fifth Circuit case in Fisher. And this goes to Judge Celia's question is what does, what work does the strictest standard actually do? How is it different from abuse of discretion? And what the Fifth Circuit said is it requires the judge to carefully consider reasonable alternatives before declaring a mistrial. And so I would, I would submit that Chief Judge Levy satisfied that standard even if we were to adopt something more than the abuse of discretion standard. The argument is that he, is that in part because nobody suggested it, but that he did not consider a particular alternative. And the one that's touted, I think, most heavily is the alternative of either allowing, well, of having a delay in the trial until the agent could testify. So first of all, I don't, I don't see any case that says that under any standard, a judge sues the defendant. And so the legal respondent has to consider every conceivable alternative. Again, the judge has to consider reasonable alternatives, which the record in this case satisfies. With regard to the issue of a continuance, Chief Judge Levy was obviously the administrative judge of the district court. He put in place the protocols that we're talking about, the COVID protocols. He made clear before trial that this case was specially set for a three-day, which then got cut down to a two-day trial, and that they were operating not at the full capacity of courtrooms, and it just wasn't feasible. Also, in terms of not knowing how long the continuance would have to be. What about asking the jurors if they would mind if the agent testified, concluded his testimony with a mask, staying more than 10 feet away from the jurors? So I think, I think that obviously was discussed on the record with the parties, and I think it was quite reasonable for Chief Judge Levy to reject that as an option for a variety of reasons. One is, you're sort of putting to the jurors the choice between, you know, sitting as jurors and, you know, just the idea, the reason that we conduct a voir dire of jurors in certain cases, like the Lara Ramirez case, is because we believe the jurors have been exposed to evidence that they shouldn't have been extraneous evidence, and we want to know what the jurors know and whether it would affect their ability to continue to be impartial. There's really no, the idea of voir diring the jury in this case, there was nothing, no information that we could really glean from them that would have been productive. You would have found out, and this itself may be a form of self-selection, which is undesirable, but you would have found out which jurors at least initially felt they were comfortable remaining in the same room with someone who was infected with COVID, and which jurors were uncomfortable. Yes, and I think Chief Judge Levy acknowledged that, but that in itself is, you know, is just, again, posing those questions. Well, as he said, that may be fraught with complexity. Yes. Because you can easily envision a juror saying, yeah, well, I'm comfortable doing that, and then going home and thinking about it or talking to his wife and getting a completely different slant on it. Yes, yes, and I think when we're talking about abuse of discretion and what issues we defer to the trial judge on, I think that, in this case, I think that determination is something that Chief Judge Levy was in the best position. Well, you know, you mentioned, you mentioned, Nancy, to Judge Chiara, that certain things were made clear to counsel before trial about the availability of courtroom space, et cetera. Was the pretrial conference in this case recorded? In other words, is there a possibility of securing a transcript of it? Yes, I believe so. Because that's not part of the appellate record. Well, part of the record that I was referring to are communications, I don't know if it's a pretrial conference, but it was certainly, on the record, it certainly made clear that the court told counsel numerous times to review the protocols, told them numerous times that this case could only be heard, had to be heard in three days, which then became two days. So the parties were acutely aware of the scheduling confines that the court found itself in, which were obviously made all the more difficult to maneuver because of the trying a case in the middle of a pandemic. Was the court using courtrooms one and two? Yes, yes. And the third courtroom was not being used as a courtroom during this time. So I would say that the court should apply this court's precedent in reviewing the district court's declaration of a mistrial, the three Simonetti factors, whether alternatives were explored, whether counsel had an opportunity to be heard, and whether the judge's decision was made after sufficient reflection, I would say that those are all satisfied here. Chief Judge Levy specifically cited to Federal Rule 26.3 and gave each party an opportunity to object to the mistrial and to propose any alternatives. Mr. Dennison proposed no alternatives to a mistrial, and so Chief Judge Levy's decision was a proper, a sound exercise of discretion, and the government would ask that this court affirm that decision. Unless there are any further questions, I'll submit on the arguments in my brief. Thank you. Thank you. Thank you, counsel. At this time, if the counsel for the appellant would reintroduce himself on the record to begin, he has a two-minute rebuttal. Thomas Hallett on behalf of the defendant appellant. The cases that I think are most informative with respect to strictest scrutiny are the Shea, S-E-A-Y versus Cannon case. That's a Fourth Circuit case where it states where strictest scrutiny applies, the critical inquiry is whether less drastic remedies are available, and then goes on to state that it is the judge's obligation to go through those remedies, to make sure that those remedies are available. Wasn't the remedy in Shea suggested by the defendant? I'm not sure about that, Your Honor. I may be mixing it up with Walt, but in one of those cases it was suggested after the mistrial. Then the Fisher case, as opposing counsel has stated, also sets forth a strictest scrutiny standard and requires the government to show that the district court carefully considered whether reasonable alternatives existed and that the court found none. The case law that has followed, I think, has been consistent in the eight circuits that have dealt with this issue. It has been expanded through Fisher. Then Shea v. Cannon is the latest, which is a 2019 case. I would urge this court to adopt that same position. And particularly where sua sponte. What do we do if we find that a case like Shea v. Cannon is inconsistent with our own precedent in McIntosh? Aren't we obliged to follow McIntosh in that instance? The precedent in McIntosh suggests that it may be Shea. It doesn't suggest, it holds. McIntosh holds that if a defendant does not suggest alternatives and then argues for those alternatives on appeal or in a subsequent proceeding, that the defendant has forfeited those alternatives and review is for plain error. That's a holding in McIntosh. That was an abuse of discretion, Kate. Thank you. In Shea, didn't the prosecution knew the witness might be unavailable? I think that's correct. And here we don't have that. We do not have that. I don't think that changes things, but we do not have that in this case.